IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REGINALD RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:21-CV-527-KFP |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks review of the Social Security Administration's decision denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits. The undersigned, having considered the record, briefs, applicable regulations, and caselaw, finds the decision of the Commissioner of Social Security must be AFFIRMED.

**I.   STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the

decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II. PROCEDURAL BACKGROUND

Plaintiff was 51 years old when the Administrative Law Judge rendered a decision finding him not disabled. R. 38–39. Plaintiff alleged disability due to high blood pressure, heart problems, acute bronchitis, hyperthyroidism, arthritis, bad vision, eye pain, eye ulcers, sweating, severe back pain, severe leg pain, insomnia, stomach cramps, and a severe cough. R. 144–45. His initial application was denied, and he requested a hearing before an ALJ. R. 170–76. After a hearing, the ALJ issued a decision finding Plaintiff not disabled. R. 25, 39. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. R. 1–3; *see* 42 U.S.C. § 405(g).

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff had severe impairments of mild degenerative disc disease and depressive disorder but he did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 31–32. He then found that Plaintiff has the residual functional capacity to perform medium work with certain exertional and mental limitations. R. 33–34. Specifically, he found Plaintiff should avoid ladders, scaffolds, unprotected heights, industrial machinery, interaction with the public, and group work. *Id.*

The ALJ determined that Plaintiff was unable to perform his past relevant work of truck driving. R. 37. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were other jobs in the national economy that Plaintiff could

perform, including a loader, order filler, or box maker. R. 38. The ALJ ultimately concluded that Plaintiff had not been under a disability from the alleged onset date, January 1, 2019. R. 28, 39.

## IV. DISCUSSION

Plaintiff raises the following issues on appeal: (1) the ALJ failed to obtain a valid waiver of representation; (2) the ALJ failed to develop the record for a pro se claimant; and (3) Plaintiff's mental RFC is not supported by the record.

### A. Substantial evidence supports the ALJ's waiver determination.

A social security plaintiff has a statutory right to counsel at his administrative hearing. *Smith v. Schweiker*, 677 F.2d 826, 828–29 (11th Cir. 1982) (citing 42 U.S.C. § 406, effectuated by 20 C.F.R. § 404.971). A plaintiff may waive this right if (1) he receives adequate notice of his options for representation and (2) he knowingly and intelligently waives that right. *See Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826, 827 (11th Cir. 2017) (citing *Smith*, 677 F.2d at 828).

#### 1. Plaintiff received adequate notice of his right to counsel.

The Social Security Administration must notify the plaintiff of his right to counsel before the administrative hearing. *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981); *Clark v. Schweiker*, 652 F.2d 399 (5th Cir. 1981)). Adequate notice requires that the ALJ inform Plaintiff of "the possibility of free counsel and limitations on attorney fees to 25% of any eventual award." *Smith*, 677 F.2d at 828–29 (citing *Clark*, 652 F.2d at 403). After receiving this information—either in a prehearing notice or at the hearing—a plaintiff

may knowingly and intelligently waive his right to counsel. *See Reynolds*, 679 F. App'x at 827 (citing *Smith*, 677 F.2d at 828).

Plaintiff admits to receiving adequate notice of his right to representation. Doc. 12 at 7 ("The ALJ provided a good review of the options for representation, noting there were organizations that could represent him for free, or on a contingency basis."). Indeed, on multiple occasions, the SSA sent Plaintiff written explanations of this right. *See* R. 170–171, 176, 181–88. On at least one occasion, the SSA informed Plaintiff of the 25% limit and the possibility of free counsel. R. 181–88. With this, the SSA satisfied its duty to inform Plaintiff. *See Smith*, 677 F.2d at 828–29 (citations omitted). Still, the ALJ reviewed these options at the hearing. *See* R. 69–70. Thus, Plaintiff received adequate notice regarding his options for representation. *See Smith*, 677 F.2d at 828–29 (citations omitted).

### 2. **Plaintiff knowingly and intelligently waived his right to counsel.**

Even if a plaintiff receives adequate notice and agrees to proceed pro se, a court may still find he did not knowingly and intelligently waive his right. *See Brown v. Shalala*, 44 F.3d 931, 935–36 (11th Cir. 1995); *Cowart*, 662 F.2d at 734–35. For example, a court may find the plaintiff did not knowingly and intelligently waive his right when the hearing transcript reveals he did not understand his options for representation. *See Brown*, 44 F.3d at 935–36. In *Brown*, the Eleventh Circuit evaluated whether a plaintiff sufficiently waived her right to representation when she appeared confused by the waiver discussion. *Id.* The court focused on the following discussion between the ALJ and the plaintiff:

> ALJ: Now, you have signed a waiver of your right to Counsel, and you were informed when you received your notice of hearing that you had the right to have . . . a representative.

4

> CLMT: We sent it in, but they just wouldn't, wouldn't, we don't understand it. . . .
>
> . . . .
>
> ALJ: Okay. Well, the main thing I want you to understand here today, is though you know you had a right to representation?
>
> CLMT: And we, we, we, we sent one in, but they just wouldn't. I don't understand.
>
> ALJ: Okay. Well, here's the thing Miss Brown . . . [Y]ou were informed in a notice of hearing, that you have a right to have a representative. You have signed a waiver saying that you understand that and you're ready to proceed today without . . . a representative[.]
>
> . . . .
>
> CLMT: –I can go on without a representative
>
> ALJ: Yeah. Is that what you want to do?
>
> CLMT: I can go on without it, sir, because I been signed up. Rehabilitation is sending me to school, starting in two weeks. . . . Trying to get me to where I can do something–
>
> ALJ: Okay. Well, . . . I want to stick to the issues that we're addressing. And that is you are ready to proceed without a representative here today. That's what you desire to do, is that correct?
>
> CLMT: Yes, sir.

*Id.* at 933. The court found, "Although [the plaintiff] eventually responded in the affirmative when asked whether she desired to proceed alone . . . [n]othing in her testimony evince[d] an understanding that she had other options which were either explored or rejected." *Id.* at 935 (citing *Cowart*, 662 F.2d at 734–35). As such, the court determined the plaintiff did not knowingly and intelligently waive her right to counsel. *Id.*

5

Waiver is also inadequate where a plaintiff agrees to proceed pro se because he was unable to access representation. *See Cowart*, 662 F.2d at 734. In *Cowart*, a plaintiff agreed to proceed unrepresented, but her spouse's testimony showed she only did so because she did not qualify for free counsel and could not afford private counsel. *Id.* The court concluded that the plaintiff's failure to obtain counsel was "due to her inability to afford counsel rather than a 'wish' to proceed without counsel" and, thus, the plaintiff did not adequately waive her rights. *Id.* But these concerns dissipate when a plaintiff has access to representation, failed to procure it for the hearing, and agrees to proceed pro se. *See Granger v. Kijakazi*, No. 3:21-CV-251-SMD, 2022 WL 16851868, at *3–5 (M.D. Ala. Nov. 10, 2022) (finding adequate waiver because plaintiff's statements that "no attorneys would touch this case" did not imply he lacked access to representation; instead, they indicated he sought representation but was unable to acquire it).

A plaintiff's cognitive defects do not automatically preclude an effective waiver. *See Granger*, 2022 WL 16851868, at *3–5. The *Granger* plaintiff claimed insufficient waiver due to his cognitive defects. *Id.* at *3. The court rejected the argument because the plaintiff never expressed his misunderstanding or asked for clarification regarding his options. *Id.* Rather, his statements "strongly suggest he fully understood his right to counsel and could not find someone to represent him." *Id.*

Plaintiff claims insufficient waiver because he "was decidedly incapable of making an 'informed choice'" and "was confused, without a grasp on who, if anyone, was representing him" due to his "severe" mental illness. Doc. 12 at 6–8. At the hearing, the ALJ and Plaintiff had the following discussion:

6

> ALJ: I understand there are some difference at this point, so is Ms. Moore representing you?
>
> CLMT: Well, Heard & Smith, I reckon they have to represent me. They represented me all -- thus far. But -- but also -- and they had something mailed and it was that they did not want to represent me coming up to this day and wanted to postpone everything and do nothing about the case or whatever it is. And so I -- I -- I been injured since -- since -- prior to this case in -- in -- in April[.]
>
>   . . . .
>
> And so I've been injured. I've been in a -- been in a -- truck accident. And so that that truck accident gave me some head injuries, some back injuries, and some more stuff that I had to take care of. And so I need -- I need to go ahead on and get me some extra protection for my medical, so to speak.
>
> ALJ: I want to cover all of that . . . But I need to know, right now, how I'm handling whether Mr. Heard's firm, and in this particular case, Ms. Moore, on behalf of Mr. Heard, is -- is still your representative. I mean, officially, they are, because the forms are here, but I'm -- because of the conversation --
>
> CLMT: Officially, they are not, because of the -- the variable they had over the phone. As of the -- the -- 9th of this prior month, they -- they were -- they were not showing up as of 7 -- 7/9. This is August now. 7/9 of July[.]
>
>   . . . .
>
> [T]hey decided that they were not even to come, even on the 12th. Why they called on the 12th is beyond me. But that's what they told me on the phone. And so after that, that was -- that was the end of that with Heard & Smith. And I said if I lost with you, I'd just go ahead on and I referred to . . . but they need representation unless I lost. And so since they told me that, if I lost against you, I would get them for representation.
>
>   . . . .
>
> That's the reason they told me like they told me, and I had a couple of more attorneys tell me that, and the amount that they want -- well,

7

>       they wasn't going to come to -- they weren't going to be with me on -- on the phone on the day. They wanted to postpone, and I figured I have waited two years in order just for this -- the time before you, so the least that I could do is talk to you, you know. And so -- so, you know, I'm -- I'm in a lot of distress, and if I had corona, I couldn't get proper help, you know, with -- with -- with how they got it and I'm fed up. And I been sick for a while.
>
>       . . . .
>
> ALJ:  Ms. Moore -- Ms. Moore, what's your position on this?
>
> ATTNY: Your Honor, it looks as Heard & Smith is going to withdraw as his representative.
>
>       . . . .
>
> ALJ:  So, believe it or not, the first thing I have to do with you right now is tell you that you -- because you are no longer represented, you still are entitled to be represented in these proceedings.
>
>       . . . .
>
>       Finally, our agency recognizes that once you have -- have understood that you are entitled to be represented, who might be able to provide that representation to you, and what if any fee there is with respect to that representation, and you may simply choose to represent yourself.
>
>       But before I get to go any further here with you this afternoon, I need to know do you want the opportunity now to seek new representation, since your previous representative has withdrawn? Or do you want to go forward serving as your own representative?
>
> CLMT: Just go forward as -- serving as my own representative because I -- I got all the paperwork from the -- the -- the documents stating that I'm disabled and they -- they should be already have been -- been submitted in by me.

R. 66–71.

This transcript does not indicate Plaintiff was confused during the waiver discussion. While Plaintiff initially stated that Heard & Smith represented him, he clarified that the

8

firm no longer represented him given their statements before and during the hearing. After Ms. Moore withdrew on the record and the ALJ reviewed Plaintiff's options, Plaintiff plainly stated that he wished to proceed unrepresented. Plaintiff's response to whether he wanted to proceed pro se is dissimilar to the *Brown* plaintiff's responses, which included, "we don't understand it" and "I don't understand." *See* 44 F.3d at 933. Plaintiff's statements do not suggest his decision to waive stemmed from misunderstanding. Rather, his testimony that he had longstanding injuries, was "fed up[,]" and waited two years for a hearing suggests his decision stemmed from an urgency to progress his case. *See* R. 67–68.

Plaintiff claims the remainder of the transcript illustrates his confusion, as he "was not responsive[,] . . . did not understand what the ALJ was asking[,] . . . [and] frequently interrupted the ALJ with unrelated information." Doc. 12 at 8. At this stage, the Court's only concern is whether Plaintiff understood his right to representation, not whether he understood the details of the proceeding after he waived that right.

Importantly, the evidence does not show Plaintiff was unable to access representation. On the contrary, prior to the hearing, Plaintiff was represented by two law firms— sometimes simultaneously.[1] Plaintiff's testimony shows he engaged other firms as well,

---

[1] On October 2, 2019, Plaintiff appointed Heard & Smith, LLP to represent him. R. 195. On January 15, 2020, Plaintiff appointed Citizens Disability, LLC as his representative. R. 197. On March 25, 2020, Plaintiff terminated Citizens and requested the SSA appoint Heard & Smith. R. 199. On April 20, 2020, Plaintiff appointed Heard & Smith once again. R. 208, 668. However, on May 19, 2020, Citizens filed a request for Plaintiff's medical records, and on May 20, 2020, Citizens filed Plaintiff's medical records with the Office of Disability Adjudication and Review. R. 310, 453. On June 15, 2020, Citizens withdrew as Plaintiff's representative due to "extraordinary circumstances." R. 202. On June 17, 2020, Heard & Smith filed Plaintiff's medical records with the SSA. R. 312, 314. On July 1, 2020, Heard & Smith filed a Response to the Telephone Hearing Request on Plaintiff's behalf and Plaintiff's medical records. R. 206,

though unsuccessfully: "I had a couple of more attorneys tell me that, and the amount that they want -- well, they wasn't going to come to -- they weren't going to be with me on -- on the phone on the day." R. 68. Still, Plaintiff was unable to maintain representation for the hearing. *See* R. 66 ("Heard & Smith . . . did not want to represent me coming up to [the hearing] and wanted to postpone everything and do nothing about the case"). Unlike the *Cowart* plaintiff, who lacked financial access to representation, this transcript shows Plaintiff had ample opportunities for representation. *See* 662 F.2d at 734. Plaintiff is more akin to the *Granger* plaintiff who, despite having access to attorneys, proceeded pro se because he could not secure counsel. *See* 2022 WL 16851868, at *3–5. Like the plaintiff in *Granger*, Plaintiff failed to maintain representation for his hearing and opted to proceed pro se. *See id.* In these situations, a plaintiff can successfully waive his right, and there is no concern he lacked access to representation. *See id.*

Finally, Plaintiff argues his schizophrenia precludes him from knowingly and intelligently waiving his right. Doc. 12 at 8. This argument is unavailing. Plaintiff's diagnosis is not determinative of his ability to knowingly and intelligently waive his right to representation. *See Granger*, 2022 WL 16851868, at *3–5. The question at hand remains the same: did the Plaintiff understand his options regarding representation and wish to proceed unrepresented? *See id.* As discussed above, the transcript shows that Plaintiff understood his options. Plaintiff never asked questions or sought clarification regarding

---

327. On August 3, 6, and 7 of 2020, Heard & Smith filed more medical records on Plaintiff's behalf. R. 333, 336, 338. On August 11, 2020, Heard & Smith filed Plaintiff's medical records with the Office of Disability Adjudication and Review. R. 545. On August 12, 2020, the day of the hearing, Heard & Smith filed its notice of withdrawal. R. 209.

this right. *See id.* Similar to the transcript in *Granger*, this hearing transcript "strongly suggest[s] [P]laintiff fully understood his right to counsel [but] could not find someone to represent him." *See id.* Accordingly, the Court finds Plaintiff knowingly and intelligently waived his right to representation, and substantial evidence supports the ALJ's waiver acceptance.

      **B.    The ALJ fully developed the record.**

Even if a court finds insufficient waiver, remand is not appropriate unless a plaintiff also shows he was prejudiced by the lack of counsel. *See Brown*, 44 F.3d at 934. "When a claimant who has not waived his right to counsel represents himself in a hearing, the hearing examiner's obligation to develop a full and fair record rises to a special duty" showing "the claimant was not prejudiced by lack of counsel." *Smith*, 677 F.2d at 829. But when a plaintiff properly waives his right to representation, the heightened burden does not apply. *See Granger*, 2022 WL 16851868, at *6. Regardless, the plaintiff bears the burden of producing evidence in support of his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Courts are "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 934 (citations omitted). A prejudice finding requires that the plaintiff show, "the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Pennington v. Comm'r of Soc. Sec.*, 952 F. App'x 862, 871 (11th Cir. 2016) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 & n.2 (11th Cir. 1985)).

Because Plaintiff successfully waived his right to representation, the ALJ had only a standard duty to develop the record. *Cowart*, 662 F.2d at 735. Plaintiff argues he was prejudiced by the ALJ's failure to develop the mental health record.[2] *See* Doc. 12 at 9–12. But Plaintiff fails to identify any evidence that the ALJ either did not have or failed to consider. This omission precludes a prejudice finding. *See Pennington*, 952 F. App'x at 871–72 (citing *Kelley*, 761 F.2d at 1540 & n.2) (plaintiff could not show prejudice because he failed to assert the existence of medical records not considered by ALJ); *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79-Orl-LRH, 2021 WL 289052, at *4 (M.D. Fla. Jan. 28, 2021) ("Indeed, the fact that the [plaintiff] did not identify a single treatment note missing from the record . . . undermines her position that the ALJ did not fully and fairly develop the record.") (citations omitted); *Nunez v. Berryhill*, No. 1:16-CV-23692-LFL, 2018 WL 6308681, at *11 (S.D. Fla. Sept. 27, 2018) (claim that ALJ did not develop record failed because plaintiff never identified missing evidence). The record contains ample evidence of Plaintiff's mental health; records span from September 22, 2018, until August 7, 2020—mere days before the hearing. *See* R. 361, 365, 371, 523, 528. The record also contains a March 2019 consultative examination; an April 2019 state disability examination; a June 2019 hospitalization; three separate psychiatric examinations conducted in May, June, and July 2019; and another hospitalization in August 2020. R. 392–95, 397–98, 600, 691–93, 698. The ALJ considered this evidence in making his

---

[2] Because Plaintiff omitted any argument as to Plaintiff's physical health records, the Court considers that argument waived and only considers whether the ALJ fully developed the record as it pertains to Plaintiff's mental health records. *See Gutherie v. Astrue*, No. 2:11-CV-3081-KOB, 2013 WL 5519512, at *11 (N.D. Ala. Sept. 30, 2013) ("[B]ecause the claimant did not raise the ALJ's findings regarding his physical impairment on appeal, the court will focus on the ALJ's findings regarding his mental impairments.").

determination. *See* R. 36. Thus, Plaintiff's prejudice argument fails. *See Pennington*, 952 F. App'x at 871 (citing *Kelley*, 761 F.2d at 1540 & n.2).

To be sure, the Court was also unable to identify any gaps in the mental health record. At the hearing, the ALJ recognized the possibility of outstanding medical evidence: "I'm pretty sure there's things that I may not have that I would like to have . . . I'm going to go over with you what was represented to me that is still outstanding, and then I'm going to let you tell me if there's anything else besides that." R. 73. However, when the ALJ attempted to confirm which documents were missing, Plaintiff clarified, "Evidently, you must already have them . . . from talking to you . . . I think you already have them." R. 96. Nonetheless, the ALJ reviewed the records that Plaintiff's former counsel identified as outstanding. Regarding the unresolved mental health records, the ALJ asked Plaintiff about his treatment at Centennial Neurology and Baptist Medical South. R. 77. While the ALJ stated he had no records from Dr. Caballero at Centennial Neurology, R. 81–82, a review of the record shows that those documents were received a few days after the hearing. R. 687–93. Likewise, the ALJ received records from Baptist South soon after the hearing. R. 696. Again, these documents were considered in the ALJ's opinion. *See* R. 36.

Plaintiff generally argues the ALJ failed to sufficiently inquire as to his mental health and, as such, lacked relevant information when deciding Plaintiff's case. Doc. 12 at 10. At the hearing, the ALJ asked Plaintiff about his mental health treatments:

ALJ: -- do you get any mental health treatment?

CLMT: Yes, sir. And --

ALJ: Who --

> CLMT: -- [INAUDIBLE]
>
> ALJ: I'm sorry, who's that?
>
> CLMT: Crossbridge usually . . . does that, but it's like . . . since I been getting . . . the treatment from Dr. Caballero, it's been not too [INAUDIBLE]. So I still take the medication and stuff, but I'm not as bad as what I was.
>
> ALJ: Got it.

R. 92. The ALJ did not otherwise inquire about Plaintiff's mental health treatment. Plaintiff takes issue with the ALJ's focus on his physical impairments in leu of his mental ones, and he includes a list of questions the ALJ should have asked regarding Plaintiff's mental health. Doc. 12 at 10. While the ALJ could have questioned Plaintiff more extensively regarding his mental health treatment, without more, the limited questioning does not equate to prejudice. *See Kelley*, 761 F.2d at 1540. Moreover, it was Plaintiff's obligation to support his claim with medical evidence. *See Ellison*, 355 F.3d at 1276. He failed to do so despite having opportunities. *See* R. 95, 101. For example, the ALJ asked Plaintiff twice whether there was anything else Plaintiff wished to add, and Plaintiff only responded with information pertaining to his physical health. *See id.* Accordingly, Plaintiff's claim that the ALJ should have asked the proposed questions fails. *See Granger*, 2022 WL 16851868, at *7 (ALJ did not err by not asking plaintiff's proposed questions in part because ALJ invited plaintiff to include additional information to no avail).

In an attempt to show that the ALJ should have inquired further about Plaintiff's mental health, Plaintiff references records evidencing his mental health issues. Doc. 12 at 11–12. But in doing so, Plaintiff contradicts his own argument that the ALJ did not fully

14

develop the record—the ALJ had not only the hearing testimony to rely on, but the medical records with which Plaintiff supports his argument. *See Granger*, 2022 WL 16851868, at *7 (plaintiff's identification of medical records supporting his cognitive limitation undermines his own argument that the ALJ did not have adequate records from which to render a decision). In fact, Plaintiff's argument cites to several pieces of evidence that the ALJ also cited in his decision. *Compare* Doc. 12 at 11–12 *with* R. 32–36.

Finally, Plaintiff claims his cognitive deficiencies prevented the ALJ from fully developing the record. *See* Doc. 12 at 9 ("[Plaintiff's] disorganized thoughts frustrated [the ALJ's] attempt to update the medical record."). To show his confusion, Plaintiff points to his testimony that Dr. Caballero, a neurologist, provided him mental health treatment. *See id.* At this stage, the Court's focus is whether Plaintiff's confusion prevented the ALJ from fully developing the record. For the reasons above, the Court finds it did not.

C.     **Substantial evidence support's the mental RFC.**

The RFC is a determination the ALJ makes based on "all the relevant medical and other evidence" in the record, including both medical and nonmedical. 20 C.F.R. §§ 416.945(a)(1), 416.945(a)(3). It is "used to determine [one's] capability of performing various designated levels of work[.]" *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064 (11th Cir. 2021) (citing 20 C.F.R. § 416.967). As long as an ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[,]'" the RFC is supported by substantial evidence. *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)). Even if some evidence exists

supporting a more restrictive RFC, if substantial evidence supports the decision, the court must affirm. *See Jacks v. Comm'r, Soc. Sec. Admin*, 688 F. App'x 814, 819–20 (11th Cir. 2017). In evaluating a medical opinion, the ALJ is not required to refer to every piece of evidence as long as the court can conclude he considered Plaintiff's conditions as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). In fact "an ALJ's RFC assessment need not 'match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ.'" *Boone v. Kijakazi*, No. 1:21-CV-34-JTA, 2022 WL 4133288, at *5 (M.D. Ala. Sept. 12, 2022) (citation omitted).

The ALJ determined Plaintiff had the RFC to understand, retain, and carry out simple instructions with few changes. R. 33–34. The ALJ also advised that Plaintiff should "avoid interaction with the public, except for incidental contact . . . [and] occasional interaction with co-workers and supervisors[,]" and he should avoid group, team, or tandem work. *Id.* But Plaintiff argues the evidence supports a more restrictive RFC. *See* Doc. 12 at 13.

As an initial matter, substantial evidence supports the mental RFC. The ALJ recognized that Plaintiff was able to perform nearly all activities of daily living, including tending to his hygiene, accomplishing chores, driving, managing money, watching television, reading, and socializing. R. 32–33. The ALJ stressed that clinical findings revealed mostly benign mental health issues: despite having very low intelligence, Plaintiff could conceptualize simple calculations and facts; despite one examiner observing poor memory, the majority of the evidence showed a normal or intact memory; despite

Plaintiff's claims that he has difficulty concentrating, treatment notes often showed Plaintiff had normal attention, appropriate reasoning, and appropriate judgment; and despite Plaintiff's claims that he could not handle stress well, Plaintiff reported an ability to adapt and cope with changes in his routine. *Id.* The ALJ also recognized the evidence generally revealed Plaintiff's logical and coherent stream of thought; appropriate mood and affect; and good insight and judgment. R. 33, 36.

While Plaintiff was twice hospitalized with mental health symptoms, the ALJ found those occurrences to be minor. R. 36. Although Plaintiff was hospitalized in June 2019 after becoming belligerent, he was temporarily moved to a psychiatric holding room, diagnosed with manic depression, and discharged the same day in stable condition. *Id.*; *see also* R. 600. Despite an August 2020 hospitalization for an altered mental status, Plaintiff still had an appropriate mood and affect, was conversant, and was able to follow commands. R. 36, 657. In light of these records, the ALJ concluded, "[W]hile it is clear the claimant has some mental health difficulties, the treatment records, which show some exacerbations but mainly benign testing, would not support more limitations to the claimant's cognitive abilities and social interactions, than provided for in the above [RFC]." R. 36. By considering these records, the ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[,]'" so the RFC is supported by substantial evidence. *See Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. 3d at 1055).

Plaintiff takes issue with the ALJ's evaluations of the opinions of Drs. Lee Stutts and Norman Garrison. Doc. 12 at 13–15. Plaintiff offers the same argument for both

17

opinions: the examination records contain evidence which supports more restrictive limitations not incorporated in the RFC or mentioned in the ALJ's decision. *Id.* This argument is unavailing. The ALJ reviewed Dr. Stutts's March 2019 psychological evaluation in which Dr. Stutts opined Plaintiff had a mild impairment in his ability to understand, remember, and carry out instructions and a moderate impairment in his ability to respond to others and withstand workplace stressors. R. 36–37. These records show that Plaintiff had an appropriate mood and affect, was cooperative, had a logical stream of thought, showed no signs of psychosis, and, despite having low intelligence, was able to complete simple calculations. *Id.* After reviewing Dr. Stutts's findings, the ALJ found the opinion persuasive, explaining that it was supported by and consistent with the record. *See id.*

Only one month later, Dr. Garrison evaluated Plaintiff and observed vastly different symptoms. *See* R. 397–99. Plaintiff appeared agitated, irritable, stressed, anxious, hostile, and paranoid. *Id.* Plaintiff also exhibited poor insight, affect, intelligence, and judgment. *Id.* Ultimately, Dr. Garrison opined that Plaintiff was schizophrenic and paranoid; he "may well be valid for Social Security Benefits[;]" his poor sight may be part of his schizophrenia; and it was unlikely he could obtain employment. *Id.* The ALJ acknowledged that Plaintiff's memory, intelligence, affect, and judgment were adjudged poor. R. 36–37. The ALJ also considered Dr. Garrison's determination that Plaintiff would never be able to drive a truck again and found, "[W]hile this is not an opinion that can be weighed, as it does not provide functional limitations[,]" it was "helpful in analyzing the case as a whole."

*Id.* In fact, the ALJ ultimately concluded that Plaintiff could not return to truck driving. R. 37.

As discussed above, the ALJ's decision shows he considered Plaintiff's mental health conditions as a whole, so he was not required to discuss each piece of evidence. *Dyer*, 395 F.3d at 1211. Most importantly, the mental RFC did not have to directly mirror the opinions of Drs. Stutts and Garrison.[3] *See Boone*, 2022 WL 4133288, at *5 (citation omitted). Even if the record contains evidence supporting more severe limitations, because substantial evidence supports the decision, the Court must affirm. *See Jacks*, 688 F. App'x at 819–20.[4]

## V.  CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1. The Commissioner's decision is AFFIRMED.

2. A final judgment will be entered separately.

---

[3] To the extent Dr. Garrison's statement that Plaintiff "may be" entitled to disability is a disability determination, the ALJ was not required to adopt it. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that [a plaintiff is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled.").

[4] Plaintiff argues that the ALJ's step-two finding was inconsistent with the record because, in addition to depression, Plaintiff also has schizophrenia, schizoaffective disorder, or other psychotic disorders. Doc. 12 at 13. This argument is highly underdeveloped: in the single sentence that Plaintiff devotes to the argument, he fails to cite to any supporting law. Accordingly, the Court considers this issue waived. *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citations omitted); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014); *see also Revel v. Saul*, No.19-CV-248-N, 2020 WL 6472640, at *7 (S.D. Ala. Nov. 2, 3030) ("Given that review of a final decision of the Commissioner is the same in district court as it is in the Court of Appeals . . . the undersigned finds that [Plaintiff] has waived her claims . . . by waiving them only in a perfunctory manner without supporting argument.") (citations omitted).

DONE this 24th day of January, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE